JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No.: | CV 14-07653-AB (JEMx) | Date: | November 21, 2014 |

| | |
|---|---|
| Title: | Victor Neely v. Lockheed Martin Corporation et al. |

| | |
|---|---|
| Present: The Honorable | ANDRÉ BIROTTE JR. |

| Carla Badirian | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** [In Chambers] Order GRANTING Plaintiff's Motion to Remand

On July 15, 2014, Plaintiff Victor Neely commenced an action in the Superior Court of California, County of Los Angeles against Lockheed Martin Corporation ("Lockheed"), Emmett Roberts, Julio Lewis, and Chris Pelletier ("Defendants"),[1] Case No. BC551755. (Dkt. No. 1, ¶ 1.) On October 2, 2014, Defendants filed a Notice of Removal to this Court under 28 U.S.C. § 1332 on the ground that the district court has diversity jurisdiction over the action.

---

[1] Plaintiff has also named Lockheed Martin Aeronautics Company ("Lockheed Aeronautics") as a defendant in this action. Lockheed Aeronautics has not been served in this action, and Defendants have submitted uncontroverted evidence that Lockheed Aeronautics is a unit within Lockheed and not a separately incorporated business entity. (Dkt. No. 4, Portzen Decl., ¶¶ 5-6.) Accordingly, the Court disregards Lockheed Aeronautics for purposes of this motion.

Before this Court is Plaintiff's Motion to Remand on the grounds that this Court lacks subject matter jurisdiction because Defendants have failed to establish complete diversity among the parties. (Dkt. No. 17.) Defendants filed an opposition brief. (Dkt. No. 18.) No reply brief was filed. The Court deems this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; Local Rule 7-15. The November 24, 2014 hearing date is vacated. Having considered the materials submitted by the parties, and for the reasons indicated below, the Court hereby **GRANTS** Plaintiff's Motion to Remand.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

This case involves a dispute regarding Plaintiff's employment with and termination by Lockheed. Plaintiff's alleges, in relevant part, the following:

Plaintiff is 61-years old. He was employed by Lockheed from March 2008 until his termination on February 18, 2014. In the first five years of his employment, Plaintiff was promoted twice (in 2008 and 2011), he received several awards for excellence, including a "Special Recognition Award" for his services in Afghanistan, and he never received any "write-ups" for performance issues. In January 2013, Plaintiff transferred from a Lockheed facility in Afghanistan to a facility in Palmdale, California. In Palmdale, Plaintiff served as a supervisor for the "corrosion mitigation" team, which services aircrafts. At the time of Plaintiff's transfer in early 2013, the corrosion mitigation team was behind schedule and working to bring the program back on track.

Julio Lewis was Plaintiff's immediate supervisor in Palmdale. Plaintiff alleges that Lewis subjected Plaintiff to harsh treatment, *e.g.*, he publicly criticized Plaintiff in front of staff and employees, and he referred to younger employees as "Young Yodas" and "Young Gods" while simply ignoring Plaintiff. In particular, Lewis and other managers (including defendant Chris Pelletier) repeatedly referred to Adam Stephens, a younger engineer in his 20s or 30s, as Young Yoda and God. In June 2013, Lewis accused Plaintiff of not following a jet schedule protocol set forth in a flow chart, which provided that the corrosion mitigation team should install panels on a jet before applying a "top coat" to those panels. Plaintiff explained that the protocol was not mandatory, and that Plaintiff applied the top coat first in the four previous occasions he performed the task. Lewis was argumentative and yelled at Plaintiff for not following the flow chart, which made Plaintiff extremely uncomfortable and caused him to fear for his job. When Plaintiff told Lewis that he was sick and would be going home, Lewis replied, "good," and told Plaintiff he would find someone else who could do the job. Plaintiff left, and Lewis asked a younger employee, who was approximately 30-years old to perform Plaintiff's duties.

In July 2013, Rachel Caceres from the Lockheed Human Resources department notified Plaintiff that he was being investigated for failure to follow the "Full Spectrum Leadership" protocol with respect to the jet schedule. Plaintiff denied the allegations and explained the June 2013 incident involving Lewis. In August 2013, Lewis directed

Plaintiff to schedule younger and newer employees to work overtime shifts in violation of company and union policy – which required overtime to be scheduled based on seniority – because (according to Lewis) Lewis preferred to work overtime with younger employees. Plaintiff refused. Shortly after, in early September 2013, an HR employee issued Plaintiff an initial Employment Performance Notice ("EPN") for failure to follow company protocol regarding the jet schedule. Sometime after Plaintiff received his initial performance notice, Lewis admitted to Plaintiff that he (Lewis) falsely accused Plaintiff of violating protocol, and that the correct procedure was first to apply the top coat and then to install the panels.

On September 26, 2013, defendant Chris Pelletier, who was a senior manager, issued Plaintiff a second EPN. Soon after, Pelletier confronted Plaintiff about issues with the jet schedule. Plaintiff explained why there were scheduling issues, and Pelletier responded: "if I had I my way, I would fire you, obviously I did not get my way." Pelletier then informed Plaintiff that he was being put on a Performance Improvement Plan ("PIP") and was required to meet with Pelletier regularly to review his progress. From November 2013 through January 2014, Plaintiff never met with Pelletier.

In early February 2014, Plaintiff received permission to transfer back to Afghanistan. On February 14, 2014, Plaintiff informed Emmett Roberts (another manager in Palmdale) about his transfer to Afghanistan. On February 18, 2014, Roberts notified Plaintiff that he was being terminated for failure to meet the PIP. Roberts dismissed Plaintiff's protests, and Plaintiff was fired and not allowed to transfer to Afghanistan.

## II. LEGAL STANDARD

### A. Removal

Under 28 U.S.C. § 1441(a), a civil action may be removed to the district court where the action is pending if the district court has original jurisdiction over the action. Under 28 U.S.C. § 1332, a district court has original jurisdiction of a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the dispute is between "citizens of different states." Section 1332 requires complete diversity, *i.e.*, that "the citizenship of each plaintiff is diverse from the citizenship of each defendant." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 67–68 (1996). Section 1441 limits removal to cases where no defendant "properly joined and served . . . is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(a)(b)(2). Removal statutes are "strictly construe[d] against removal." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance. *Id.* Accordingly, the removing party bears a heavy burden of establishing original jurisdiction in the district court. *Id.*

### B. Fraudulent Joinder

A non-diverse party may be disregarded for purposes of determining whether jurisdiction exists if the court determines that the party's joinder was "fraudulent" or a "sham." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001); *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). The term "fraudulent joinder" is a term of art and does not connote any intent to deceive on the part of plaintiffs or their counsel. *Lewis v. Time Inc.*, 83 F.R.D. 455, 460 (E.D. Cal. 1979), *aff'd.*, 710 F.2d 549 (9th Cir. 1983). The relevant inquiry is whether plaintiff has failed to state a cause of action against the non-diverse defendant, and the failure is obvious under settled state law. *Morris*, 236 F.3d at 1067; *McCabe*, 811 F.2d at 1339.

The burden of proving fraudulent joinder is a heavy one. The removing party must prove that there is "no possibility that plaintiff will be able to establish a cause of action in State court against the alleged sham defendant." *Good v. Prudential Ins. Co. of America*, 5 F. Supp. 2d 804, 807 (N.D. Cal. 1998). In this regard, "[r]emand must be granted unless the defendant shows that the plaintiff 'would not be afforded leave to amend his complaint to cure [the] purported deficiency.'" *Padilla v. AT & T Corp.*, 697 F. Supp. 2d 1156, 1159 (C.D. Cal. 2009); *Macey v. Allstate Prop. & Cas. Ins. Co.*, 220 F. Supp. 2d 1116, 1117 (N.D. Cal. 2002) ("If there is a non-fanciful possibility that plaintiff can state a claim under California law against the non-diverse defendants the court must remand.").

### III. DISCUSSION

Defendants removed this action to federal court on the grounds that this Court has original jurisdiction under § 1332. In the instant Motion to Remand, Plaintiff argues that this Court lacks original jurisdiction because (among other reasons) there is not complete diversity as between Plaintiff (a citizen of California) and individual defendants Lewis, Pelletier, and Roberts (all citizens of California), as required by 28 U.S.C. § 1332.[2] Defendants argue that complete diversity exists because Lewis is a citizen of Arizona,[3] and

---

[2] Plaintiff argues that Defendants cannot meet their burden to establish that Plaintiff is a citizen of California because the complaint only alleges Plaintiff's residence. (Mot. at 7.) A natural person's citizenship is determined by state of domicile, not residence. "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). Plaintiff alleges that he resides, and has resided during all relevant times, in California. (Compl. ¶ 1.) Given that Plaintiff does not dispute his California citizenship, and it is more likely than not that he is a California citizen, the Court finds that this argument is without merit.

[3] In the alternative, Defendants argue that Lewis is a "sham" defendant. (Dkt. No.

that Pelletier and Roberts are sham and fraudulently joined defendants.

Plaintiff's complaint asserts three claims against Pelletier and Roberts: harassment based on age in violation of the Fair Employment and Housing Act ("FEHA"), failure to promote in violation of FEHA, and intentional infliction of emotional distress. Turning to the harassment claim, FEHA makes it unlawful for "an employer . . . or any other person," to harass an employee because of age. Cal. Gov. Code § 12940(j)(1). Harassment includes conduct "outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives." *Janken v. GM Hughes Electronics*, 46 Cal. App. 4th 55, 63 (1996). The conduct must be "sufficiently severe or pervasive to 'alter the conditions of [the victim's] employment and create an abusive work environment," and it excludes conduct that is "occasional, isolated, sporadic, or trivial." *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App 3d 590, 609 (1989) (citations omitted). Generally, managers cannot be individually liable for harassment under FEHA for conduct regarding personnel decisions. *Reno v. Baird*, 18 Cal. 4th 640, 646 (1998) (distinguishing harassment from discrimination claims, the later which allows individual liability of managers for personnel decisions). However, managers may be individually liable for harassment where the personnel decisions "have a secondary effect of communicating a hostile message. This occurs when the actions establish a widespread pattern of bias." *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 709 (2009), *as mod.* (Feb. 10, 2010).

In this case, Plaintiff alleges that Lewis and Pelletier referred to younger employees as young "Yodas" and "Gods," while ignoring Plaintiff, who is twice the age of some of the younger employees. Lewis ordered Plaintiff to schedule the younger employees on overtime shifts because he (Lewis) preferred working overtime with younger employees, despite the fact that company and union policy required scheduling of overtime based on seniority and not preference. Additionally, the managers exhibited hostility toward Plaintiff. Lewis yelled at Plaintiff and apparently caused him to receive an EPN for violating a jet schedule protocol based on an accusation that Lewis later said was false. Pelletier issued Plaintiff a second EPN and ultimately put Plaintiff on a PIP, and Roberts notified Plaintiff of his termination for failure to comply with the PIP.

Defendants argue that Plaintiff has not alleged facts sufficiently severe and

---

1, ¶ 34-43.) Defendants have put forth uncontroverted evidence that Lewis is a citizen of Arizona. (Dkt. No. 3, Lewis Decl., ¶¶ 5-10) (declaring that he is temporarily residing in California but intends to return to and permanently reside in Arizona, where he owns a home, his wife lives, his mail is delivered, he is licensed to drive, and he is registered to vote). Accordingly, the Court need not address Defendants' alternative argument.

pervasive to constitute harassment, and that Pelletier and Roberts' conduct constitute personnel management decisions that cannot support a claim for harassment as a matter of law.  (Opp. at 7-9.)   Defendants cite several cases where courts have affirmed judgments for employers on a much greater showing of potentially harassing conduct.  *See, e.g.*, *Ramirez v. Salvation Army*, 2008 WL 670153 (N.D. Cal. Mar. 6, 2008) (granting summary judgment for a harassment claim because supervisor's comments in front of customers that young people work faster and that the plaintiff was "getting old" was insufficiently severe and pervasive); *Stevens v. Cnty. of San Mateo*, 267 F. App'x 684 (9th Cir. 2008) (affirming summary judgment for employer on harassment claim because isolated and sporadic comments – such as a supervisor telling plaintiff that he is an "old lion," "old dog," and "old stupid man" – were insufficiently severe and pervasive); *Kortan v. California Youth Auth.*, 217 F.3d 1104 (9th Cir. 2000) (affirming summary judgment for employer on harassment claim because supervisor's offensive comments – such as calling plaintiff "Madonna" and a "castrating bitch" – were not sufficiently severe and pervasive).

    At this stage in the litigation, the Court cannot find that there is "no possibility" Plaintiff will be able to establish a harassment claim against Pelletier and Roberts in state court, especially if he is granted leave to amend.  As discussed *supra*, Defendants cite to several cases where judgment was entered in favor of the employer on a much greater showing of harassing conduct.  But each of these cases was decided at the summary judgment stage, where the plaintiffs' ability to amend the complaint had long since passed. In light of the California Supreme Court's decision in *Roby*, it is possible that the managerial conduct by Lewis, Pelletier, and Roberts – when considered collectively – could have contributed to a "widespread pattern of bias" with respect to Plaintiff's age, which could support a harassment claim.  *Roby*, 47 Cal. 4th at 709.

    Defendants also cite *Chau v. EMC Corp.*, 2014 WL 842579 (N.D. Cal. Feb. 28, 2014), and *Gorom v. Old Dominion Freight Line Inc.*, 2013 WL 195377 (C.D. Cal. Jan. 17, 2013), both of which are distinguishable.  *Chau* involved a claim for harassment based on sex (including pregnancy); the district court found that the plaintiff could not possibility state a claim for harassment because the supervisors did not know she was pregnant, and her only factual allegation was that the supervisors did not respond to her emails and did not hire her for a particular position.  *Gorom* involved a claim for harassment based on age and disability; the district court found that the supervisors' denying plaintiff a transfer and accusing him of misconduct provided "no basis for the Court to infer that . . . any comments or gestures that could be construed as harassment."  In other words, *Chau* and *Gorom* were completely devoid of any allegations involving the plaintiffs' status in a protected group.  In contrast, Plaintiff in this case alleges facts that could allow an inference that managers collectively harbored animus toward Plaintiff because of his age.  This precludes the Court from finding that Plaintiff cannot possibly state a claim for harassment against Pelletier and Roberts.

Defendants argue that the Court must decide the jurisdiction issue without considering the possibility of amendment to the operative complaint, citing *Kruso v. International Telephone & Telegraph Corp.*, 872 F.2d 1416, 1426 n.12 (9th Cir. 1989). (Opp. at 15-16.)   The Court finds that *Kruso* is distinguishable because it holds that plaintiffs failed to state a claim against the defendants and also that they *could not* have stated a claim under any facts of the case.   *See Kruso*, 872 F.2d at 1427 ("Defendants are correct that plaintiffs cannot prevail on any claims they seek to bring against the defendants, including Bookwalter and Green, because plaintiffs were not parties to the alleged agreements."); *see also Umamoto v. Insphere Ins. Solutions, Inc.*, 2013 WL 2084475, at *7 (N.D. Cal. May 14, 2013) (citing the same); *Morales v. Gruma Corp.*, 2013 WL 6018040, at *5 n.3 (C.D. Cal. Nov. 12, 2013) (same).   The Court reads *Kruso* to mean that where some factual circumstance precludes a plaintiff from stating his claim as a matter of law, then the Court need not consider the possibility of amendment in analyzing a claim of fraudulent joinder.   There is no such circumstance here.   The allegations, as currently plead in the complaint, may be lacking, but the Court must consider the possibility that Plaintiff could allege additional facts sufficient to state a claim against Pelletier and Roberts.

## IV.   CONCLUSION

Defendants have not met their heavy burden that there is no possibility Plaintiff could assert a claim against Pelletier and Roberts.   While Defendants may ultimately prevail on the harassment claim, "such a consideration is of limited import for purposes of the instant motion, which requires Plaintiff to make even less of a showing than would be required on a motion to dismiss."   *Chavez v. Amerigas Propane, Inc.*, 2013 WL 25882, at *8 (C.D. Cal. Jan. 2, 2013) (citation omitted).   Because it is possible Plaintiff may state a claim against Pelletier and Roberts, the Court need not address the parties' alternative arguments.   Accordingly, the Court **GRANTS** Plaintiff's Motion to Remand.   (Dkt. No. 17.)   Plaintiff's request for attorneys' fees and costs is **DENIED**.

The Court hereby **REMANDS** this case to the Superior Court of California, Los Angeles County, Stanley Mosk Courthouse, 111 North Hill Street, Los Angeles, California 90012, for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1447(c).   The Court **ORDERS** the Clerk to send a certified copy of this Order to the state court.

The February 23, 2015 scheduling conference is vacated.

**IT IS SO ORDERED.**